1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

JOSEPH MIZZONI,                    )        3:11-cv-00358-HDM (WGC)
                                   )
            Plaintiff,             )        **REPORT AND RECOMMENDATION**
                                   )        **OF U.S. MAGISTRATE JUDGE**
      vs.                          )
                                   )
STATE OF NEVADA, et. al.           )
                                   )
                                   )
            Defendants.            )
_____)

   This Report and Recommendation is made to the Honorable Howard D. McKibben, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is the Motion to Dismiss filed on behalf of Defendants Dr. Robert Bannister and E.K. McDaniel (Defendants). (Doc. 14.)[1] Plaintiff Joseph Mizzoni (Plaintiff) has opposed (Doc. #16), and Defendants replied (Doc. #18). After a thorough review, the court recommends that Defendants' motion be granted in part, and denied in part.

## I. BACKGROUND

   Plaintiff Joseph Mizzoni (Plaintiff), a *pro se* litigant in custody of the Nevada Department of Corrections (NDOC), brings this action pursuant to 42 U.S.C. § 1983. (Pl.'s Compl. (Doc. #5 ) at 1.) The events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP). (*Id.*) Defendants are Dr. Robert Bannister, E.K. McDaniel,

_____

   [1] Refers to court's docket number.

1   and Kent Robinson. (*See id.* at 2, Screening Order (Doc. # 4) at 3, 5-6.)[2]

2          On screening, the court determined that Plaintiff states a colorable claim for deliberate

3   indifference to a serious medical need under the Eighth Amendment. (*See* Doc. # 4.) Plaintiff

4   alleges that on June 25, 2010, he saw the eye doctor at ESP, Dr. Robinson, and complained of

5   blurry/foggy vision in his left eye. (Doc. # 5 at 3.) Dr. Robinson determined that Plaintiff had

6   a cataract in his left eye due to a prior surgery for retina detachment. (*Id.*) Plaintiff asserts that

7   Dr. Robinson did not recommend any treatment for this condition. (*Id.*) On July 28, 2010,

8   Plaintiff noticed further loss of vision in his left eye and reported it through a medical kite to

9   the eye doctor and medical personnel, and requested treatment. (*Id.* at 3-4.) The response to

10  the medical kite stated that Plaintiff did not meet the criteria for cataract treatment. (*Id.*)

11         Plaintiff alleges that he sent another medical kite on August 4, 2010, requesting

12  treatment for his vision. (Doc. # 5 at 4.) He received a response stating that Plaintiff had a

13  slight cataract, but the problem is from a retina detachment, and cataract surgery will not help.

14  (*Id.*)

15         Plaintiff sent yet another medical kite on December 8, 2010, stating that his vision was

16  getting worse and requesting to see an eye doctor. (Doc. # 5 at 4.) Plaintiff was told by a nurse

17  that he would be put on a list to see the eye doctor, but the wait would be seven to eight

18  months. (*Id.*)

19         Plaintiff subsequently submitted an informal grievance, and received a response

20  acknowledging a cataract, but stating that the problem is due to a detached retina and cataract

21  surgery will not provide relief. (Doc. # 5 at 4.) Plaintiff filed a first level grievance dated

22  February 2, 2011, requesting treatment for his eye. (*Id.*) He was told that he had been seen by

23  ESP's eye doctor who concluded cataract surgery would not be helpful. (*Id.*) Plaintiff was

24  further instructed to submit a medical kite if he was experiencing additional problems. (*Id.*)

25  Plaintiff filed a second level grievance for eye treatment. (*Id.*) The response was in agreement

26  

27         [2] Kent Robinson has yet to be served, and this motion is brought only on behalf of Dr. Robert Bannister and E.K. McDaniel. (*See* Docs. # 20, # 24, # 25, and # 26.)

28                                                      2

1   with the response to the first level grievance. (*Id.* at 4-5.) Plaintiff alleges he was never seen

2   again and did not receive any treatment for his eye condition. (*Id.* at 5.) Plaintiff alleges that

3   he is now almost completely blind in his left eye.  (Doc. # 5 at 5.)

4          Dr.  Bannister and E.K. McDaniel (collectively, Defendants) now move to dismiss

5   Plaintiff's Complaint on the following grounds: (1) the Complaint fails to allege sufficient facts

6   to implicate liability against them; (2) they are entitled to qualified immunity; and (3) Plaintiff

7   cannot recover money damages against Defendants in their official capacities. (Doc. # 14.)

8                              **II.  LEGAL STANDARD**

9          "A dismissal under Federal Rule of Civil Procedure 12(b)(6) is essentially a ruling on a

10   question of law." *North Star Int'l v. Ariz. Corp. Comm'n.,* 720 F.2d 578, 580 (9th Cir. 1983)

11   (citation omitted). Under Rule 8(a), "a claim for relief must contain...a short and plain

12   statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The

13   Supreme Court has found that at minimum, a plaintiff should state "enough facts to state a

14   claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

15   (2007). The complaint need not contain detailed factual allegations, but it must contain more

16   than "a formulaic recitation of the elements of a cause of action." *Id.* at 555 (citation omitted).

17   The Rule 8(a) notice pleading standard requires the plaintiff to "give the defendant fair notice

18   of what the . . . claim is and the grounds upon which it rests." *Id.* (internal quotations and

19   citation omitted).

20          In considering a motion to dismiss for failure to state a claim upon which relief may be

21   granted, all material allegations in the complaint are accepted as true and are to be construed

22   in a light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.2d 336,

23   337-38 (9th Cir. 1996) (citation omitted). However, this tenet is "inapplicable to legal

24   conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the

25   elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

26   (citation omitted). "While legal conclusions can provide the framework of a complaint, they

27   must be supported by factual allegations." *Id.* at 1950.  In addition, pro se pleadings must be

28                                          3

liberally construed. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) ("we continue to construe *pro se* filings liberally when evaluating them under *Iqbal*"). As a general rule, the court may not consider any material beyond the pleadings in ruling on a motion to dismiss for failure to state a claim without converting it into a motion for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

## III. DISCUSSION

**A. PRELIMINARY MATTERS**

### 1. Request for extension of copy work limit

In his opposition, Plaintiff requests an extension of his copy work limit. (Doc. # 16 at 3-8.) He asserts that he has reached his $100 copy work limit and because he is indigent, it is impossible for him to copy kites, grievances and other documents to serve Defendants with all of the exhibits in support of his opposition. (*Id.*)

As set forth above, a motion to dismiss challenges the sufficiency of the allegations of a complaint, and the court is not permitted to look at documents outside the four-corners of the complaint in determining whether to grant or deny a motion to dismiss. Accordingly, the court will not consider the exhibits submitted in support of Plaintiff's opposition, and to the extent he requests an extension of his copy work limit in order to serve Defendants with copies of exhibits filed in support of his opposition, that request is **DENIED**.

### 2. Defendant Kent Robinson

Defendant Kent Robinson has yet to be served. On January 12, 2012, the court issued a Notice Regarding Intention to Dismiss Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure with respect to Kent Robinson. (Doc. # 20.) Plaintiff was given up to and including February 11, 2012 to file a proof of service with respect to Kent Robinson, or face dismissal without prejudice. (*Id.*) On March 9, 2012, the court extended the time to file the proof of service until April 8, 2012. (Doc. # 24.) The Clerk issued a summons for Dr. Kent Robinson and sent the same to the U.S. Marshal with his address, and sent a copy of the complaint and USM-285 form to Plaintiff to effectuate service. (Doc. # 25, Doc. # 26.) Plaintiff was warned

1   that if he failed to file a proof of service with respect to Kent Robinson on or before April 8,

2   2012, Kent Robinson would be dismissed without prejudice pursuant to Rule 4(m).  (Doc. #

3   25.)

4        As of April 10, 2012, no proof of service of Kent Robinson had been filed.  Accordingly,

5   the court recommends dismissal of Kent Robinson without prejudice pursuant to Rule 4(m).

6   **B.  EIGHTH AMENDMENT DELIBERATE INDIFFERENCE STANDARD**

7        A prisoner can establish an Eighth Amendment violation arising from deficient medical

8   care if he can prove that prison officials were deliberately indifferent to a serious medical need.

9   *Estelle v.  Gamble*, 429 U.S. 97, 104 (1976). A finding of deliberate indifference involves the

10  examination of two elements: "the seriousness of the prisoner's medical need and the nature

11  of the defendant's responses to that need." *McGuckin v.  Smith*, 974 F.2d 1050, 1059 (9th Cir.

12  1992), *rev'd on other grounds, WMX Tech., Inc.  v.  Miller*, 104 F.3d. 1133 (9th Cir. 1997). "A

13  'serious' medical need exists if the failure to treat a prisoner's condition could result in further

14  significant injury or the 'unnecessary and wanton infliction of pain.'" *Id*. (citing *Estelle*, 429

15  U.S. at 104). Examples of conditions that are "serious" in nature include "an injury that a

16  reasonable doctor or patient would find important and worthy of comment or treatment; the

17  presence of a medical condition that significantly affects an individual's daily activities; or the

18  existence of chronic and substantial pain." *Id*. at 1059-60; *see also Lopez v.  Smith*, 203 F.3d

19  1122, 1131 (9th Cir.  2000) (quoting *McGuckin* and finding that inmate whose jaw was broken

20  and mouth was wired shut for several months demonstrated a serious medical need).

21       If the medical needs are serious, Plaintiff must show that Defendants acted with

22  deliberate indifference to those needs. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a

23  high legal standard." *Toguchi v.  Chung*, 391 F.3d 1051, 1060 (9th Cir.  2004). Deliberate

24  indifference entails something more than medical malpractice or even gross negligence. *Id*.

25  Inadvertence, by itself, is insufficient to establish a cause of action under § 1983. *McGuckin*,

26  974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows

27  of and disregards an excessive risk to inmate health or safety; the official must both be aware

28

5

1   of the facts which the inference could be drawn that a substantial risk of serious harm exists,

2   and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also*

3   *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Farmer*, 511 U.S. at 858).

4   "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they

5   deny, delay, or intentionally interfere with medical treatment" or the express orders of a

6   prisoner's prior physician for reasons unrelated to the medical needs of the prisoner. *Hunt v.*

7   *Dental Dep't.*, 865 F.2d 198, 201 (9th Cir. 1989) (internal quotation marks and citation

8   omitted). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate

9   that the delay led to further injury. *McGuckin*, 974 F.2d at 1060.

10      **1. DR. BANNISTER**

11      Dr. Bannister argues that Plaintiff has not alleged sufficient facts to demonstrate the

12   culpable state of mind required to state a deliberate indifference claim. (Doc. # 14 at 5-7.) Dr.

13   Bannister asserts that according to the Complaint, his involvement was limited to providing

14   a response to Plaintiff's second level grievance. (*Id.* at 6.) Dr. Bannister argues that he is not

15   alleged to have had direct involvement in Plaintiff's care, and therefore, could not have known

16   of an alleged excessive risk to Plaintiff's health. (*Id.*) Instead, Dr. Bannister argues that he only

17   knew that the eye doctor's medical opinion regarding cataract surgery would not benefit

18   Plaintiff. (*Id.*)

19      The court disagrees with Dr. Bannister's analysis and finds that the factual allegations

20   of the Complaint are sufficient to state a claim of deliberate indifference against Dr. Bannister.

21   Dr. Bannister is alleged to be the medical director of NDOC. Plaintiff alleges that Dr. Bannister

22   was put on notice of his eye condition through the grievance process. Regardless of whether Dr.

23   Bannister was actually providing Plaintiff medical care, he was the medical director, and

24   Plaintiff told him in a grievance that even though the eye doctor had stated that cataract

25   surgery was not recommended, he was still experiencing a loss of vision, and Dr. Bannister did

26   nothing in response. Taking these allegations as true, they sufficiently state an Eighth

27   Amendment claim against Dr. Bannister. Accordingly, the motion to dismiss Dr. Bannister

28

1    on this ground should be denied.

2        **2. E.K. MCDANIEL**

3        E.K. McDaniel argues that the Complaint should be dismissed as to him because there

4    is no respondeat superior liability under § 1983, and the Complaint fails to include sufficient

5    allegations regarding his personal involvement in the alleged constitutional violation to state

6    a claim for relief. (Doc. # 14 at 7-9.)

7        E.K. McDaniel is correct that there is no respondeat superior liability under § 1983. *See*

8    *Chudacoff v. Univ. Med Ctr. of S. Nev*, 649 F.3d 1143, 1151 (9th Cir. 2011) (citing *Monell v.*

9    *Dep't of Soc. Servs*., 436 U.S. 658, 692 (1978)). "Because vicarious liability is inapplicable to

10   *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant,

11   through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*,

12   129 S.Ct. 1937, 1948 (2009). *Iqbal* did not involve a claim of deliberate indifference under §

13   1983. In *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011), the Ninth Circuit stated, "[w]e see

14   nothing in *Iqbal* indicating that the Supreme Court intended to overturn longstanding case law

15   on deliberate indifference claims against supervisors in conditions of confinement cases." *Id*.

16   at 1207. In *Starr*, the Ninth Circuit determined "the plaintiff pleaded sufficient facts to

17   plausibly suggest Sheriff Baca's 'knowledge of' and 'acquiescence in' the unconstitutional

18   conduct of his subordinates." *Hydrick v. Hunter*, 2012 WL 89157, at * 3 (9th Cir. Jan. 12,

19   2012) (citing *Starr*, 652 F.3d at 1207). The Ninth Circuit found that the plaintiff in *Starr*

20   included "many allegations" "detailing what Sheriff Baca knew or should have known, and what

21   Sheriff Baca did or failed to do." *Id*. (quoting *Starr*, 652 F.3d at 1209).

22       In the recent case of *Hydrick v. Hunter*, 2012 WL 89157 (9th Cir. Jan. 12, 2012), the

23   Ninth Circuit determined that the factual allegations before the court more closely

24   "resemble[d] the 'bald' and 'conclusory' allegations in *Iqbal*, instead of the detailed factual

25   allegations in *Starr*." *Hydrick*, 2012 WL 89157 at * 3 (citing *Iqbal*, 129 S.Ct. at 1951, *Starr*, 652

26   F.3d at 1216). The Ninth Circuit concluded that the plaintiff in *Hydrick*, "pleaded insufficient

27   facts to establish 'plausible' claims against the Defendants in their individual capacities." *Id*.

28

1    In *Hydrick*, the plaintiff predicated his claim, at least in part, on the theory that the
2 defendants were liable because they created policies that violated the plaintiff's constitutional
3 rights. *See Hydrick*, 2012 WL 89157 at * 4. The Ninth Circuit concluded that instead of
4 including specific allegations of wrongdoing, the plaintiff fell short by including only
5 "conclusory allegations and generalities." *Id*. The court found fault with the plaintiff's failure
6 to allege "a *specific policy* implemented by Defendants or a *specific* event or events instigated
7 by the Defendants..." *Id*.  (emphasis original). The court held that, "[e]ven under a 'deliberate
8 indifference' theory of individual liability, the Plaintiff must still allege sufficient facts to
9 plausibly establish the defendant's 'knowledge of' and 'acquiescence' in the unconstitutional
10 conduct of his subordinates." *Id*.  (citing *Starr*, 652 F.3d at 1206-07).

11    Here, Plaintiff alleges that E.K. McDaniel was the warden of ESP, and as such was
12 responsible for promulgating, maintaining, and enforcing rules, directives and regulations, and
13 denied Plaintiff proper medical care when he refused to force his employees Robinson and
14 Bannister to evaluate him further. (Doc. # 5 at 7-8.)  The court finds that these general
15 allegations are not sufficient under *Hydrick* to state a claim against E.K.  McDaniel.  They do
16 not *plausibly* establish E.K. McDaniel's "knowledge of" and "acquiescence in" unconstitutional
17 conduct with factual detail required by *Hydrick*. *See Hydrick*, 2012 WL 89157 at * 4 (citing
18 *Starr*, 652 F.3d at 1206-07).

19    Accordingly, the motion to dismiss should be granted as to E.K. McDaniel. (*Id*.) "Unless
20 it is absolutely clear that no amendment can cure the defect...a pro se litigant is entitled to
21 notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the
22 action." *Lucas v. Dep't of Corr*., 66 F.3d 245, 248 (9th Cir.  1995) (per curiam); *see also Lopez*
23 *v. Smith*, 203 F.3d 1122, 1126, 1131 (9th Cir.  2000) (en banc).  It is not "absolutely clear" that
24 Plaintiff cannot cure the defects in his Complaint; therefore, Plaintiff should be given leave to
25 amend to assert a claim against Defendant McDaniel that comports with *Iqbal*, *Starr*, and
26 *Hydrick*.

27 ///

28                                                8

1  **C.  QUALIFIED IMMUNITY**

2        Defendants argue that the Complaint does not state a constitutional violation against

3  them, and even if it did, the constitutional right at issue was not clearly established at the time

4  of the alleged wrongful conduct so that a reasonable prison official would have known they

5  were violating Plaintiff's rights. (Doc. # 14 at 9-11.) Because the court has recommended

6  granting the motion to dismiss as to E.K. McDaniel (with leave to amend), it will address the

7  qualified immunity argument with respect to Dr. Bannister.

8        "[Q]ualified immunity protects government officials from liability for civil damages

9  insofar as their conduct does not violate clearly established statutory or constitutional rights

10  of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 129

11  S.Ct. 808, 815 (2009) (citation and internal quotations omitted).

12        In analyzing whether a defendant is entitled to qualified immunity, the court must

13  consider two issues. *Saucier v. Katz*, 533 U.S. 194, 2201 (2001), *overruled in part on other*

14  *grounds by Pearson*, 555 U.S. at 236 ("while the sequence set forth [in *Saucier*] is often

15  appropriate, it should no longer be regarded as mandatory"). The court must determine

16  whether the plaintiff alleges a deprivation of a constitutional right, assuming the truth of his

17  factual allegations, and whether the right at issue was "clearly established" at the time of

18  defendant's alleged misconduct. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1241

19  (2010) (quoting *Pearson*, 555 U.S. 223, 129 S.Ct. at 816 (2009)). "Whether a right is clearly

20  established turns on the 'objective legal reasonableness of the action, assessed in light of the

21  legal rules that were clearly established at the time it was taken.'" *Id.* (quoting *Pearson*, 555

22  U.S. 223, 129 S.Ct. at 822); *see also Huff v. City of Burbank*, 632 F.3d 539, 549 (9th Cir.

23  2011) (citation omitted) ("The reasonableness inquiry is objective, evaluating 'whether the

24  officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting

25  them, without regard to their underlying intent or motivation.'").

26        Whether a constitutional right was violated and whether the right was clearly established

27  at the time of the violation are legal questions for the court. *See Serrano v. Francis*, 345 F.3d

28                                                            9

1071, 1080 (9th Cir. 2003); *Martinez v. Stanford*, 323 F.3d 1178, 1183 9th Cir. 2003); *see also Huff*, 632 F.3d at 548. However, "[i]f a genuine issue of material fact exists that prevents a determination of qualified immunity at summary judgment, the case must proceed to trial." *Serrano*, 345 F.3d at 1077. This inquiry must be "undertaken in light of the specific context of the case." *Saucier*, 533 U.S. at 201. "[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Dunn v. Castro*, 621 F.3d 1196, 1201 (9th Cir. 2010) (internal quotations and citations omitted).

"Qualified immunity is only an immunity from a suit for money damages, and does not provide immunity from a suit seeking declaratory or injunctive relief." *Hydrick v. Hunter*, 2012 WL 89157, at * 1 (citing *Center for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Dept.*, 533 F.3d 780, 794-95 (9th Cir. 2008); *Los Angeles Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th Cir. 1993)).

Plaintiff's Complaint seeks injunctive relief in the form of an order that Plaintiff receive a medical procedure to correct his vision. (Doc. # 5 at 16.) Preliminarily, Plaintiff may proceed on his claim for injunctive relief.

Qualified immunity may be resolved by way of a motion to dismiss. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (citation omitted) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery"). In addition, the court is authorized to dismiss *sua sponte* an action that seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A.

First, the court found on screening and herein that Plaintiff has alleged the deprivation of a constitutional right against Defendant Bannister.

Second, the court finds that the law regarding constitutional violations under the Eighth Amendment related to deliberate indifference to a serious medical need was clearly established at the time of the alleged misconduct. *See Estelle*, 429 U.S. 97; *Farmer*, 511 U.S. 825; *Lopez*, 203 F.3d 1122; McGuckin, 974 F.2d 1050.

1   Therefore, insofar as the motion seeks dismissal of Plaintiff's Complaint on the ground

2   of qualified immunity, it should be denied.

3   **D.   CLAIMS FOR MONETARY DAMAGES AGAINST DEFENDANTS IN THEIR**

4   **OFFICIAL CAPACITIES**

5   A state official sued in his or her official capacity for *damages* is not  a person subject

6   to suit under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Claims

7   against defendants in their official capacities are actually suits against the entity of which the

8   named defendants are agents. *See Kentucky v. Graham*, 473 U.S. 159 (1985). "As long as the

9   government entity receives notice and an opportunity to respond, an official-capacity suit is,

10  in all respects other than name, to be treated as a suit against the entity." *Id*. at 166. The real

11  party in interest in such suits is the entity itself, and the entity, not the named defendant, will

12  be liable for any damages. *Id*.

13  Defendants' motion should be granted as to Plaintiff's official capacity damages claims.

14  However, Plaintiff also seeks injunctive relief (Doc. # 5 at 16), and Plaintiff's official capacity

15  claims may proceed in this regard.

16  **IV. RECOMMENDATION**

17  **IT IS HEREBY RECOMMENDED** that the District Judge enter an Order

18  **GRANTING IN PART AND DENYING IN PART** Defendants' motion (Doc. # 14) as

19  follows:

20  (1) The motion to dismiss should be **DENIED** as to Defendant Bannister;

21  (2) The motion to dismiss should be **GRANTED WITH LEAVE TO AMEND** as to

22  Defendant McDaniel;

23  (3) The motion should be **DENIED** on qualified immunity grounds;

24  (4) The motion should be **GRANTED** as to Plaintiff's official capacity claims for

25  monetary damages.  Plaintiff's official capacity claims for injunctive relief may proceed.

26  ///

27  ///

28

11

1   **IT IS HEREBY FURTHER RECOMMENDED** that the District Judge enter an

2   Order **DISMISSING WITHOUT PREJUDICE** Defendant Kent Robinson, pursuant to Rule

3   4(m).

4   The parties should be aware of the following:

5   1.      That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the

6   Local Rules of Practice, specific written objections to this Report and Recommendation within

7   fourteen (14) days of receipt.  These objections should be titled "Objections to Magistrate

8   Judge's Report and Recommendation" and should be accompanied by points and authorities

9   for consideration by the District Court.

10  2.      That this Report and Recommendation is not an appealable order and that any

11  notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the

12  District Court's judgment.

13  DATED: April 10, 2012.

14

15

16  _____

17  WILLIAM G.  COBB
    UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28

12